IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES WOOSLEY,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

      Defendant.

Civ. No. 6:15-cv-02001-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff Charles Woosley brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI). The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on January 18, 2012, alleging disability beginning August 1, 2009. Tr. 51. The claim was denied initially on May 3, 2012 and upon reconsideration on August 8, 2012. Tr. 110-113. A hearing was held on February 25, 2014 and on April 4, 2014 the ALJ issued a decision finding plaintiff was not disabled. Tr. 48-67. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. If evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Aukland v. Massanari,* 257 F.3d 1033, 1034-35 (9th Cir. 2000) (when evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke

in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). A court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995). *See also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence).

## DISCUSSION

The Social Security Administration uses a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity, age, education, and work experience. *Id.*

Here, the ALJ found at step one of the sequential analysis that there had been a continuous 12-month period which Plaintiff did not engage in substantial gainful activity (SGA). Tr. 54. At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc and joint disease of the lumbar spine. *Id*. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 55. At step four, the ALJ found plaintiff retained the residual functional capacity to perform his past relevant work as an

auto-parts counter person and potato sorter, both as actually and generally performed. Tr. 61. The ALJ evaluated Plaintiff as having the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except the plaintiff is limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; frequent balancing; occasional stooping, kneeling and crouching; no crawling; and must avoid concentrated exposure to extreme cold, excessive vibration, and hazardous machinery. Tr. 56.

Plaintiff disputes the ALJ's finding at step 4 contending that, when the entire record is examined, there is not substantial evidence to support the ALJ's decision and the decision is based on improper legal standards.. Pl.'s Br. 8-9, ECF No. 11. Plaintiff contends that his combined impairments are of a severity sufficient to preclude him from performing his past work, as well as any work which exists in significant numbers in the national and local economy. *Id*.

**I. Substantial evidence**

**A. Reliance on vocational expert testimony: potato sorter**

Plaintiff argues the ALJ erred by relying on vocational expert ("VE") testimony that was not consistent with the *Dictionary of Occupational Titles* ("DOT") and the ALJ did not ask about any specific discrepancy, acknowledge a discrepancy, or ask the VE for clarification. Pl.'s Br. 9, ECF No. 11. While the ALJ is not required to rely on VE, the ALJ may elect to use a VE's expertise to ascertain whether an individual can perform their past work (either as actually performed, or as it is generally performed). Occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT. Policy SSR 00-4P, 2000 WL 1898704 at *2, (S.S.A. Dec. 4, 2000). When there is an apparent unresolved conflict between VE and the DOT, the ALJ must elicit a reasonable explanation for the conflict before

relying on the VE evidence to support a determination or decision about whether the claimant is disabled. *Id.* At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. *Id.*

Defendant argues the ALJ complied with SSR 00-4p by plainly asking the VE if his testimony was consistent with the DOT. Def.'s Br. 8, ECF No. 14. The ALJ asked, "has your testimony today been consistent with the Dictionary of Occupational Titles, your professional experience, and other companion publications?" Tr. 45. The vocational expert responded, "Yes, it has." Tr. 46. Plaintiff argues that the ALJ's inquiry did not go far enough, that the conversation only included the VE confirming that he believed his testimony was consistent with the DOT. Pl.'s Br. 10, ECF No. 11. The ALJ relied on VE testimony that the Plaintiff could perform his past jobs as a potato sorter despite his restriction of only occasional stooping. Tr. 37. The VE testimony conflicts with the DOT which lists the potato sorter as requiring frequent stooping, but nonetheless the ALJ did not elicit a reasonable explanation for the conflict before relying on the VE evidence. I find here that the ALJ failed to elicit a reasonable explanation for the conflict before relying on the VE evidence. I also find the error to be harmless, because 1) there is a reasonable basis on the claimant's own account for concluding that the claimant could perform his past occupation as a potato sorter, and 2) the claimant could perform his past relevant work as an auto-parts counter person as explained below.

**B. DOT position: auto-parts counter person**

Plaintiff next argues that the VE mistakenly identified an incorrect DOT position as Woosley's prior occupation. The VE identified Plaintiff's prior occupation to be an auto-parts counter person (DOT 279.357-062), a "clerk" who "[s]ells automotive, appliance, electrical, and other parts and equipment in repair facility or parts store." Tr. 35-37. Plaintiff argues that the

5 – OPINION AND ORDER

more specific DOT job that correlates to Woosley's past occupation is "automobile accessories salesperson" (DOT 273.357-030), someone "sell[ing] automobile supplies and accessories, such as tires, batteries, seat covers, mufflers, and headlights: ascertains make and year of automobile and reads catalog for stock number of item." Plaintiff argues his past work only involved automotive parts, and not parts related to appliances, electrical components which are included in the definition of an auto-parts counter clerk.

Defendant argues the substantial evidence supports the VE categorizing Woosley's past relevant work at Napa Auto Parts and Schuck's Auto Parts as an auto-parts counter clerk position. Tr. 35. The plaintiff, on being asked to describe his work, noted that he worked on the counter and identified himself as "a parts counter person." Tr. 34-35. In his work history report, plaintiff wrote that his job title was Counter Specialist and generally identified himself as "counter – salefloor [sic] person." Tr. 263, 267. Concerning his work-related activities, Woosley noted that he restocked parts, "took care of catalogs from vendors to be put in binder," sold parts to customers, restocked shelves, and opened and closed the store. Tr. 32, 267. Defendant also notes that the "automobile accessories salesperson" job has additional vocational characteristics set forth in the DOT entry that were not part of Woosley's duties in his past jobs. Def.'s Br. 11-12, ECF No. 14. These additional characteristics include using algebra; drafting business letters, expositions, summaries, and reports; and participating in panel discussions, dramatizations and speaking extemporaneously on a variety of subjects. DOT No. 273.357-030, *available at* 1991 WL 672471. I find substantial evidence exists in the record (plaintiff's testimony and self-reported forms, DOT definitions, and the VE's findings) to support the ALJ's decision to characterize Plaintiff's past relevant work as "auto-parts counter clerk."

Plaintiff also raises concerns regarding his residual functional capacity that limited plaintiff from the climbing of ladders, ropes or scaffolds. The ALJ determined that the claimant is limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds. Plaintiff's concern is unwarranted, because the job of auto-parts counter person (DOT No. 279.357-062) states that climbing is not required with this position. Tr. 56.

### C. Residual functional capacity determination

Plaintiff argues the ALJ erred by failing to address how the evidence supported her conclusions, especially in light of her review of the medical opinion evidence. Pl.'s Br. 20, ECF No. 11. The ALJ afforded great weight to the opinions of the reviewing physicians, May Ann Iyer, MD, and Sharon Eder, MD. Both physicians reviewed the record and opined that Woosley was limited, in part, to being able to sit up to one hour at a time and stand up to two hours at a time. Tr. 59, 85, 104). The ALJ did not set forth a corresponding limitation in the RFC. Plaintiff also argues the ALJ failed to provide any reason to dismiss this part of Dr. Iyer's or Dr. Eder's opinion. Plaintiff also argues the ALJ erred by affording limited weight to the opinion of consultative examiner, Michael Henderson, MD, without specificity. Pl.'s Br. 21, ECF No. 11. Defendant contends the ALJ appropriately weighed the medical opinions and adequately captured the limitations by restricting Woosley's work-related activities to reduced range of light work. Def.'s Br. 13, ECF No. 14.

Dr. Iyer reviewed the claimant's medical file and initial disability application and determined that the claimant remained able to occasionally lift and/or carry up to twenty pounds and, frequently lift and/or carry up to ten. Tr. 84-85. Dr. Iyer determined that although Woosley required rest after sitting for an hour and standing for two, he could sit, stand, or walk up to six hours in the course of a standard eight-hour workday. Tr. 84-85. Based on Dr. Iyer's assessment,

7 – OPINION AND ORDER

the examiner determined that Woosley remained capable of performing his past relevant work in the automotive parts business and in agriculture as a potato sorter. Tr. 86. Dr. Eder documented nearly identical medical findings. Tr. 94-96.

The ALJ took a thorough analysis of each physician's findings. Tr. 59. The ALJ determined great weight was appropriate in consideration of the "objective evidence, the lack of treatment for prolonged periods, the minimal clinical findings, and the claimant's demonstrated ability to work." Tr. 58-59, 212, 263-64. The ALJ found that the non-examining doctor's opinion was not contradicted by all other evidence. Ultimately, the ALJ's imposed restrictions limiting Woosley's work-related activities to the light exertional level are consistent with the State agency medical consultants' opinions. "[L]ight work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, *available at* 1983 WL 31251, at *6. I find the ALJ's findings on plaintiff's residual functional capacity appropriately accommodate the restrictions.

I also find substantial evidence exist to support the ALJ giving the consultative examiner's (Dr. Henderson) opinion "limited weight." The ALJ adequately resolved the conflicts within the medical testimony. The claimant's own statement regarding his work activities conflict with Dr. Henderson's opinion and show substantial evidence for the ALJ to conclude that Woosley has few, if any limitation. Two days prior to Dr. Henderson's examination, Woosley completed a work history form and described his full-time employment. Tr. 264. His work day consisted of manually transporting potatoes in bags and cans, lifting 60-100 pound garbage cans filled with potatoes; carrying bags of potatoes over 100 feet; and lifting and dragging wooden pallets up to 60 feet. Tr. 264.

## CONCLUSION

Because substantial evidence exists within the record as a whole to support the Commissioner's decision, this Court AFFIRMS the Commissioner's Decision.

IT IS SO ORDERED.

DATED this 13th day of February, 2017.

     /s/Michael J. McShane    
Michael J. McShane
United States District Judge

9 – OPINION AND ORDER